UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**NIKOLOZ BURASHVILI**                    **CASE NO. 3:25-CV-01940 SEC P**

**VERSUS**                                **JUDGE TERRY A. DOUGHTY**

**SCOTT LADWIG ET AL**                    **MAG. JUDGE KAYLA D. MCCLUSKY**

**MEMORANDUM ORDER**

Pending before the Court is a Motion for Temporary Restraining Order ("TRO") [Doc. No. 3] filed by Petitioner, Nikoloz Burashvili ("Petitioner"). Respondents, Pamela Bondi, Scott Ladwig, Todd M. Lyons, and Kristi Noem (collectively, "Respondents") oppose the Motion [Doc. No. 9]. No reply was filed. After carefully considering Petitioner's filings and the applicable law, the Motion is **DENIED**.

**I.    Background**

Petitioner is a citizen and national of Georgia who entered into the United States seeking asylum on March 26, 2024.[1] Petitioner presented himself for inspection upon entry into the United States at or near San Ysidro, California and was arrested and detained by United States Customs and Border Protection.[2] On March 27, 2024, Department of Homeland Security ("DHS") issued a Notice to Appear to the detained Petitioner, stating he was placed into removal proceedings under Section 240 of the Immigration and Nationality Act and charging him as

---

[1] [Doc. No. 1, p. 15].
[2] [Id. at pp. 15, 18].

Page **1** of **6**

inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).[3] On March 30, 2024, United States Immigration Customs and Enforcement ("ICE") released Petitioner from detention and enrolled him in an Alternative to Detention program ("ATD") where he was subject to electronic monitoring.[4] ICE also issued Petitioner an Order of Recognizance, ICE Form I-220A, ordering him to report to the New York Field Office on April 4, 2024.[5] In compliance with the Order of Recognizance, Petitioner reported to the New York Field Office on April 4, 2024, and was ordered to return a year later.[6]

Petitioner filed a Form I-589 application requesting asylum, withholding, and protection under the Convention Against Torture on or about July 23, 2024.[7] Petitioner was issued an Employment Authorization Document on an unknown date.[8] Petitioner continued to comply with the Order of Recognizance by reporting to the New York Field Office on April 4, 2025, November 4, 2025, and November 5, 2025.[9] Petitioner was re-arrested and detained by ICE during the routine check-in at the New York Field office on November 5, 2025.[10] Petitioner was transferred to the Jackson Parish Correctional Center in Jonesboro, Louisiana, where he remains today.[11]

The parties have briefed all relevant issues, and the matter is ripe.

---

[3] [Id. at p. 15].
[4] [Id.].
[5] [Id.].
[6] [Id.].
[7] [Id.].
[8] [Id.].
[9] [Id. at p. 16].
[10] [Id.].
[11] [Id.].

## II. Law and Analysis

Federal courts may issue a TRO without notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b).

A TRO, however, may be treated as a preliminary injunction when the adverse party has sufficient notice. *See Butts v. Aultman*, 953 F.3d 353, 361 n.6 (5th Cir. 2020) ("[I]f there is an adversary hearing, or the order is entered for an indeterminate length of time, [a] 'temporary restraining order' may be treated as a preliminary injunction.") (quoting 11A *Wright & Miller's Federal Practice and Procedure* § 2951 (3d ed. 2019)).

When considering whether to issue a preliminary injunction, lower courts must follow the four-part test from *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). Parties "seeking a preliminary injunction must establish (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, *and* (4) that an injunction is in the public interest." *Id.* at 20 (citation modified).

The Supreme Court, very recently, reminded lower courts that PIs are, as their name suggests, preliminary and should "not conclusively resolve legal disputes." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025). In other words, they should not be used to rule on the final, merits question.

Rather, TROs help "preserve the status quo until a trial" or other final disposition is rendered. *Id.* at 193. That begs the question: what does it mean to preserve the status quo? While the words "status quo" do not appear within Rule 65 or the *Winters* factors, it is implicit in the "irreparable harm" prong. Courts sometimes describe irreparable harm as those injuries, which "cannot be undone through monetary remedies." *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984) (citation omitted). But that is only one side of the coin. Irreparable harm must also take away "the court's ability to render a meaningful decision on the merits." *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974); *see also* Samuel L. Bray, *The Purposes of the Preliminary Injunction*, 78 Vand. L. Rev. 809, 823–26 (2025) (concluding the same after probing Founding-era sources). Put differently, "[t]here is always a status quo. There should not be a preliminary injunction to protect it, however, unless the court's ability to render a meaningful decision on the merits would otherwise be in jeopardy." *Callaway*, 489 F.2d at 573.

Here, Petitioner seeks the same relief in his underlying Habeas Petition and his Motion for preliminary relief—release from ICE custody or, in the alternative, a bond hearing.[12] Liberty is inarguably the most paramount natural right. And true, the Fifth Circuit has held even momentary loss of a right constitutes irreparable injury. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (citation omitted) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). But context

---

[12] [Doc. No. 1, pp. 17, 20]; [Doc. No. 3-1, p. 12].

Page 4 of 6

matters. In *Opulent Life Church*, the plaintiff leased property for a new church but was denied a renovation permit by the defendants. *Id.* at 283. In finding the defendant's act caused irreparable harm, the Fifth Circuit noted that the plaintiff "will lose its lease if it is not allowed to operate in its leased property." *Id.* at 297. So, a final ruling on the merits is too little, too late. Again, the inquiry is whether something suggests a final ruling would not grant the plaintiff the prayed-for relief. *See Callaway*, 489 F.2d at 573.

Petitioner cannot show either that he faces imminent removal or the existence of something else that would make a favorable ruling on the Habeas Petition too little, too late. Petitioner's claim of irreparable harm or injury is that his continued detention, without a deprivation hearing for his rearrest or a bond hearing, violates his procedural and substantive due process rights under the Fifth Amendment—"and that violation alone constitutes irreparable harm."[13] Respondents argue that the preliminary relief sought in the instant Motion—immediate release or, in the alternative, a bond hearing—mirrors the ultimate relief sought in the Habeas Petition and the arguments for both are the same and should be denied.[14] Respondents argue "seeking injunctive relief that mirrors the relief requested in the habeas petition is nothing more than a motion to decide my habeas petition now."[15] Respondents further urge the Court to refrain from allowing the "Petitioner to

---

[13] [Doc. No. 3-1, p. 10].
[14] [Doc. No. 8, p. 1].
[15] [Id. at p. 3].

commit an end-run around the habeas process."[16] The Court agrees with Respondents. So, Petitioner's Motion fails.

The Court notes that these findings may change. If Respondents' actions change Petitioner's circumstances such that the Court could not eventually redress Petitioner's claims, preliminary relief might be appropriate. Accepting Petitioner's contention that any unlawful detention warrants preliminary relief would circumvent the Congressionally-selected procedures set forth in the habeas statute, 28 U.S.C. § 2241. This Court declines to do so.

### III. Conclusion

For these reasons,

**IT IS ORDERED** that Petitioner's Motion for a TRO [Doc. No. 3] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Habeas Petition [Doc. No. 1] is referred to the Magistrate Judge.

MONROE, LOUISIANA, this 8th day of January 2026.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE

---

[16] [Id.].