UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

NIKOLOZ BURASHVILI                                    CIVIL ACTION NO. 25-1940

                                                     SECTION P

VS.

                                                     JUDGE TERRY A. DOUGHTY

SCOTT LADWIG, ET AL.                                 MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Petitioner Nikoloz Burashvili, a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[1]  For reasons that follow, the Court should grant habeas corpus relief on the basis of Petitioner's second claim.

## Background

Petitioner is a citizen of Georgia.  [doc. # 1, p. 1].  He has no criminal history.  *Id.* at 14.  He entered the United States of America approximately "a year and a half" before he was detained on March 26, 2024.  *Id.* at 3, 15.  On March 27, 2024, "DHS, USCIS issued a Notice to Appear ('NTA') to Petitioner while he remained detained, stating that he was placed into removal proceedings under section 240 of the Immigration and Nationality Act ('the Act')."  *Id.*  "The NTA alleges that the Petitioner is an 'alien present in the United States who has not been admitted or paroled,' and charges Petitioner inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as a non-citizen present without admission or parole."  *Id.*  Petitioner states:

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

> On March 30, 2024, while still detained in California and awaiting a court date, ICE enrolled [him] in an Alternative to Detention program ("ATD"). As part of this program, [he] was subject to electronic monitoring.
>
> On March 30, 2024, Petitioner was also issued an Order of Recognizance, ICE Form I-220A, ordering him to report in person to the New York Field Office on April 4, 2024. In connection to his release pursuant to 8 U.S.C. § 1226(a), ICE made a determination that he was not a flight risk or a danger to the community. On April 4, 2024, Petitioner reported to ICE's New York Field Office. He was ordered to report again on April 4, 2025.
>
> On or about July 23, 2024, Petitioner filed his Form I-589 application, requesting asylum, withholding, and protection under the Convention Against Torture ("CAT").
>
> [Petitioner] was issued an Employment Authorization Document ("EAD"), which allowed him to obtain employment in the U.S.
>
> . . . .
>
> On April 4, 2025, Petitioner reported to New York's ICE office as required.
>
> On November 4, 2025, Petitioner reported to New York's ICE office again as required. He was required to return the next day. Despite his appearance to check ins, and pending asylum. [sic]. On November 5, 2025, Petitioner was re-arrested during a routine check-in with ICE in New York.
>
> At the time of Petitioner's re-arrest he had been released into the United States, had continuously lived in the country for about two years, and was not at a port of entry.

[doc. # 1, pp. 15-16].

Petitioner filed this proceeding on December 4, 2025. He asserts two claims.[2] First,

Petitioner claims: "Respondents have deprived his due process rights by re-detaining and have

---

[2] Petitioner also contends that he is a protected member of a certified nationwide class and that Respondents "are bound by the judgment in [*Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --F. Supp.3d--, 2025 WL 3289861 (C.D. Cal. Nov. 25, 2025)]." [doc. #1, pp. 2-3]. In that decision, the District Court found that persons like Petitioner meeting certain identified requirements are "Bond Eligible." Petitioner contends that he has continued to be subject to detention "despite his clear entitlement to consideration for release on bond" under the *Maldanado Bautista* decision. *Id.* at p. 3. However, this Court has previously rejected these

violated the INA by re-detaining him without the possibility of a bond hearing under 8 U.S.C. 1226(a). . . . Because DHS previously exercised its parole from detention under 8 U.S.C. § 1226(a)(2)(B), and in its discretion released the Petitioner from detention, the government lacks authority to re-detain him under § 1225(b)'s mandatory provisions.  At the time of Petitioner's re-arrest in November 2025, Petitioner had been living in the United States for almost two years, had a pending asylum application with the immigration court, and a work permit.  Therefore, Petitioner was not subject to detention pursuant to § 1225(b), and any custody must proceed, if at all, under § 1226(a)." [doc. # 1, p. 18].

Second, Petitioner claims in large part: "Whereas here, the government has released the Petitioner on parole to apply for asylum, Respondents cannot simply re-arrest and re-detain Petitioner for no reason at all.  The Government's authority to re-arrest a noncitizen and revoke their release is proscribed by the Due Process Clause because it is well-established that individuals released from incarceration have a liberty interest in their freedom. To protect that interest, due process requires notice and a hearing prior to any re-arrest, at which the individual is afforded the opportunity to advance their arguments for why their release should not be revoked." [doc. # 1, p. 19].

For relief, Petitioner seeks a declaration that his re-detention was unlawful, an order preventing Respondents from removing him without notice and an opportunity to be heard, a declaration that his detention violates the Due Process Clause of the Fifth Amendment, immediate release from detention, and attorneys' fees under the Equal Access to Justice Act. [doc. # 1, p. 20].

---

arguments.  *See Mendoza v. Rice,* Civil Action No. 1:26-0058 (W.D. La. Jan. 14, 2026) [doc. #6, pp. 10-19] (Doughty, J.).

**Law and Analysis**

**I. Jurisdiction**

Because it concerns the Court's power to decide the case, "[j]urisdiction is always first." *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) (quoting *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021)). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation omitted). Several sections of the Immigration and Nationality Act curtail the jurisdiction of federal district courts in immigration cases. *See Jennings v. Rodriguez*, 583 U.S. 281, 292-96 (2018).

Respondents argue that this Court lacks jurisdiction "to even consider the merits of this matter under" 8 U.S.C. § 1252(b)(9), (g). [doc. # 13, p. 7].

Section 1252(b)(9) provides: "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact." However, Section 1252(b)(9) only applies to "review of orders of removal." [3]  8

---

[3] *See Kambo v. Poppell*, 2007 WL 3051601, at *9 (W.D. Tex. Oct. 18, 2007); *Immigrant Defs. L. Ctr. v. Mayorkas*, 2023 WL 3149243, at *17 (C.D. Cal. Mar. 15, 2023).

U.S.C. § 1252(b).  Petitioner does not challenge an order of removal; thus, Section 1252(b)(9) does not strip this Court of jurisdiction.[4]

Section 1252(g) provides: "Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien *arising from the decision or action by the Attorney General to commence proceedings*, adjudicate cases, or execute removal orders against any alien under this chapter." (emphasis added).

With respect to Petitioner's first claim, the Court has jurisdiction.  As one judge in this district explained: "The Fifth Circuit has confirmed that § 1252(g) only applies to 'the Attorney General's discretion to decide whether and when to prosecute or adjudicate removal proceedings or to execute removal orders.[5]' [] Petitioner's request for an individualized bond hearing is not a decision to commence removal proceedings, adjudicate his case, or execute his removal order. Since Petitioner is not challenging a discretionary decision of the Attorney General in the prosecution, adjudication, or execution of a removal order, this Court's review is not precluded

---

[4] On March 5, 2026, an immigration judge ordered Petitioner's removal.  However, Petitioner appealed that decision on March 16, 2026, and the appeal remains pending.  Therefore, Petitioner has properly challenged removal in his immigration proceedings, and, as of this date, there is no final order of removal.  *See* https://acis.eoir.justice.gov/en/caseInformation (last visited 04/05/2026).

[5] *Duarte v. Mayorkas*, 27 F.4th 1044, 1055 (5th Cir. 2022) (citing *Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999)).

by § 1252(g).[6]" *Martinez v. Rice*, 2025 WL 3554620, at *2 (W.D. La. Dec. 11, 2025) (footnotes in original).[7]

Petitioner's second claim also does not arise from a decision to "commence proceedings, adjudicate cases, or execute removal orders."  Section 1252(g) does not bar courts from reviewing an alien detention order, because such an order, "while intimately related to efforts to deport, is not itself a decision to 'execute removal orders' . . . ."  *Cardoso v. Reno*, 216 F.3d 512, 517 (5th Cir. 2000).  Petitioner does not contest the initiation of removal proceedings or argue that Respondents may not adjudicate his case.  Rather, he argues that he should have received procedural due process so that he could have an opportunity to contest his detention status.  Thus, Section 1252(g) does not eliminate jurisdiction over this claim.  *See generally Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 678 (W.D. Tex. 2025); *Diaz v. Wofford*, 2025 WL 2581575, at *6 (E.D. Cal. Sept. 5, 2025).

**II. Petitioner's First Claim**

Respondents argue that *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026), forecloses Petitioner's first claim.  [doc. # 13, p. 2].  On February 6, 2026, the Fifth Circuit Court of Appeals held that aliens who have not been admitted may be detained without bond hearings pursuant to 8 U.S.C. § 1225(b)(2)(A) even when they have been present in the United States for many years.  *Buenrostro*, 166 F. 4th at 502.  In reaching its conclusion, the court analyzed the meaning of "seeking admission" and "applicants for admission" in 8 U.S.C. § 1225.  *Id.*  The court concluded that "applicants for admission," which includes all aliens who have not

---

[6] *See Guerrero Orellana v. Moniz*, 2025 WL 2809996, at *4 (D. Mass. Oct. 3, 2025) (holding that Section 1252(g) did not apply to challenge of prolonged detention without a bond hearing).

[7] As noted, *infra,* the undersigned declines to reach the first claim.  The *Martinez* decision is cited only for its discussion of jurisdiction.

previously been admitted to the United States, are necessarily "seeking admission" and, therefore, subject to mandatory detention under § 1225(b)(2)(A).  *Id.*

Petitioner "submits that his case is distinguishable because he presented himself at the port of entry upon arrival for inspection on or about March 26, 2024, and the Department of Homeland Security processed him through photographs, fingerprints, and placed him into their system, before releasing him into the United States pursuant to 8 U.S.C. § 1226(a), with the issuance of a Form I-220A." [doc. # 14, p. 2].  He adds, "DHS cannot now, redetain without changed circumstances, under 8 U.S.C. § 1225(b)(2), because they already elected to release him pursuant to 8 U.S.C. § 1226(a)." *Id.*

The undersigned, however, declines to opine on this issue at this time because the *Buenrostro* court has not issued a formal mandate.  Thus, the decision is not "final" and "effective."  FED. R. APP. P. 41(c) ("The mandate is effective when issued."); *see* ADVISORY COMMITTEE NOTE TO FED. R. APP. P. 41 ("A court of appeals' judgment or order is not final until issuance of the mandate; at that time the parties' obligations become fixed.").  At the time of the issuance of the Report and Recommendation, a petition for rehearing en banc remained pending before the Fifth Circuit.  *See Buenrostro-Mendez v. Bondi*, No. 25-20496 [doc. #233].[8]  Instead, the undersigned finds that Petitioner is entitled to habeas corpus (which is the ultimate relief he seeks) on the basis of his second claim.

### III. Petitioner's Second Claim

To reiterate, Petitioner claims in large part: "The Government's authority to re-arrest a noncitizen and revoke their release is proscribed by the Due Process Clause because it is well-

---

[8] It is without question that if the Fifth Circuit denies the rehearing en banc in *Buenrostro-Mendez* that Petitioner's first claim will be foreclosed by that decision.

established that individuals released from incarceration have a liberty interest in their freedom. To protect that interest, due process requires notice and a hearing prior to any re-arrest, at which the individual is afforded the opportunity to advance their arguments for why their release should not be revoked." [doc. # 1, p. 19].

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted).

**A. Liberty Interest**

"No person shall . . . be deprived of . . . liberty . . . without due process of law[.]" U.S. CONST. AMEND. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*. at 690.

In *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972), the Supreme Court held that the requirements of procedural due process applied to parole revocations. The Court first noted that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.* at 482. Buttressing the parolee's interest in liberty is the society's interest "in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole" and its interest "in treating the parolee with basic fairness." *Id.* at 484.

The Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Id.* at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.*

Here, Petitioner's release on his own recognizance while his removal proceedings are pending is similar to the parole described in *Morrissey*.[9] His release, for example, allowed him—with the Government's explicit permission—the freedom to live and work (after he received his work authorization) in the United States. Thus, the undersigned finds that Petitioner has a protected liberty interest in his release.[10]

---

[9] Of note, and while not dispositive, some courts have even held that a convicted prisoner mistakenly released from federal prison is entitled to procedural due process in the form of a hearing before reincarceration. *See, e.g.*, *Hurd v. Dist. of Columbia, Gov't*, 864 F.3d 671, 682 (D.C. Cir. 2017). Here, Petitioner was not convicted of any crime, and the Government released him with its express permission.

[10] *See, e.g., O.F.C. v. Almodovar*, 2026 WL 74262, at *7 (S.D.N.Y. Jan. 9, 2026) ("Both immigration parolees and those released on immigration bond are free to live their lives in this country and to form the . . . enduring attachments of normal life. . . . While released on bond, Petitioner was able to resume his life with his U.S.-citizen wife and his young U.S.-citizen children (one of whom was born while Petitioner was released). . . . The Court has little difficulty concluding that if the Government wishes to strip Petitioner of that liberty and these attachments, it must do so in a manner consistent with due process.") (internal quotation marks, quoted source, and record citation omitted).

To the extent Respondents argue that Petitioner does not have a liberty interest because 8 U.S.C. § 1225(b) provides for mandatory detention, the argument is unpersuasive because the record shows that the government treated petitioner as subject to 8 U.S.C. § 1226(a), not Section 1225(b), when it released him. The immigration officials who released petitioner issued an order of release on his own recognizance subject to certain conditions. This was an "implicit promise" that his release would "be revoked only if he fail[ed] to live up to the [release] conditions," like in *Morrissey*. *See* 408 U.S. at 482. As other courts have held, "[w]hen a person [is released from custody and] lives in society at large for years, [reasonably believed that the law required his release], and only then faces re-incarceration on the ground that he was [erroneously] released, the prospect of re-incarceration has implications both for him and the other individuals in his life as substantial as those of the parolee in *Morrissey*." *Hurd*, 864 F.3d at 682. And as another court observed, "Even if § 1225(b)(1) *did* apply, petitioner has a protected liberty interest based on the government's prior representation to him in the order of release on recognizance that his release was pursuant to § 1226." *J.C.L.A. v. Wofford*, 2025 WL 2959250, at \*4 (E.D. Cal. Oct. 17, 2025).

More importantly, procedural due process dictates that before Respondents re-arrest Petitioner, he be afforded notice and the opportunity to at least address Respondents' contention concerning the dichotomy between Sections 1225 and 1226 (as well as whether he is a flight risk or a danger to society). "[D]ue process does not hinge on whether one has a winning argument, a colorable argument, or any argument at all." *Aurecchione v. Falco*, 2023 WL 6255529, at \*12 (S.D.N.Y. Sept. 25, 2023) (citing *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be 'at a meaningful time and in a meaningful manner.'")). The two issues—procedural due process and

10

the statutory interpretation of Sections 1225 and 1226 as addressed in *Buenrostro-Mendez* —

overlap but are distinct.  Even assuming Petitioner is detained under Section 1225 and subject to

mandatory detention, his statutory and regulatory statuses do not foreclose his procedural due

process claim.[11]

### B. *Mathews* Factors

"[I]dentification of the specific dictates of due process generally requires consideration of

three distinct factors: First, the private interest that will be affected by the official action; second,

the risk of an erroneous deprivation of such interest through the procedures used, and the

probable value, if any, of additional or substitute procedural safeguards; and finally, the

Government's interest, including the function involved and the fiscal and administrative burdens

that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424

U.S. 319, 335 (1976).[12]

Here, the first factor above militates in favor of Petitioner as freedom from bodily

restraint is the "most elemental of liberty interests."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 259

(2004); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).  To reiterate, "Freedom from

imprisonment—from government custody, detention, or other forms of physical restraint—lies at

the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas*, 533 U.S. at 690.  As

Petitioner states:

> For about 18 months, Petitioner exercised his freedom under the release on his
> own recognizance issued by DHS in 2024. He lived in New York with his
> spouse, established deep community ties, complied with the conditions of

---

[11] *See Marceau v. Noem*, 2026 WL 368953, at *1 (W.D. Tex. Feb. 9, 2026) ("Marceau's constitutional interest in her liberty exists above and apart from the Immigration and Nationality Act and attendant regulations.") (citing *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025)).

[12] Respondents do not address any of the *Mathews* factors.

release, and lived openly under government supervision while his removal proceedings remained pending.

 . . . .

Petitioner was released by DHS on his own recognizance in March 2024, following an individualized custody determination. For about 18 months, he remained at liberty under government supervision. During that time, he complied fully with reporting requirements, filed his asylum application, and obtained employment authorization valid through 2029. The government does not allege that he absconded, violated supervision conditions, or engaged in criminal conduct.

[doc. # 14, pp. 6-7].

Petitioner established a liberty interest worthy of procedural protection when, with the Government's express permission, he lived in the United States for approximately 18 months and exercised his freedom by living with his spouse, establishing community ties, and complying with all the terms of his supervision.  Terminating his valued liberty likely inflicted a grievous loss.  *See generally Lopez Miranda v. Flores*, 2025 WL 3901908, at *3 (W.D. Tex. Dec. 10, 2025) (holding that "noncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status.").[13]

Next, the second factor above—the risk of an erroneous deprivation of such interest through the procedures used—weighs in Petitioner's favor because the Government did not offer

---

[13] Even assuming *arguendo* that Petitioner's time living in the United States was insufficient to create a cognizable liberty interest, Respondents provided him with a liberty interest when they released him from custody on his own recognizance.  It is well established that once the government opts to provide a liberty or property interest, it cannot arbitrarily revoke this benefit without due process of law.  *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (holding in the context of "good-time credits" for prisoners that "a person's liberty is equally protected [by the due process clause], even when the liberty itself is a . . . creation of the State"); *Morrissey*, 408 U.S. at 482 (noting "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others"); *Graham v. Richardson*, 403 U.S. 365, 374 (1971) (rejecting the concept that constitutional rights turn upon whether a governmental benefit is characterized as a "right" or as a "privilege").

Petitioner any procedure before re-detaining him.  As Petitioner highlights: "there was no pre-deprivation process and no prompt post-deprivation neutral review. . . . Without due process, there would be nothing to protect a noncitizen from . . . rais[ing] issues as to an arbitrary arrest and re-detained [sic] when he had already been released under Section 1226(a) with form I-220A."  [doc. # 14, p. 8].

"The risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing."  *A.E. v. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025); *see Martinez v. Noem*, 2025 WL 2965859, at *4 (W.D. Tex. Oct. 21, 2025) (detaining "without holding a bond hearing creates a substantial risk that he may be erroneously deprived of his liberty.").  The risk of erroneous deprivation of his liberty interest is obvious where there is no pre-detention process to determine if his circumstances have changed such that he now presents a danger or a flight risk when the Government previously determined that he presented neither.

The third factor—the Government's interest, including any fiscal and administrative burdens that the additional or substitute procedural requirement would entail, if any—likewise weighs in Petitioner's favor.  There is nothing before the Court demonstrating a governmental interest in continuing to detain Petitioner until he has a final order of removal.  While the Government has an interest in protecting the community and preventing flight, ICE already "made a determination that [Petitioner] was not a flight risk or a danger to the community" and released him on an Order of Recognizance.  [doc. # 1, p. 15].  Further, Petitioner "honored his reporting requirements with" ICE.  [doc. # 1, p. 1].  But even if concerns of flight or protecting the community were present (they are not), the parties can address them at a pre-deprivation

13

hearing.[14]  Finally, Respondents do not identify any fiscal or administrative burden in providing additional or substitute process.[15]

Because all the factors support Petitioner, the Court should find that the Government violated his right to procedural due process under the Fifth Amendment to the United States Constitution.  Moreover, given the weight of the liberty interests at stake and the fact that a custody determination already occurred, immediate release is the appropriate remedy. *See Alvarez- Rico* 2026 WL 522322 at *6 (immediate release); *J.U. v. Maldonado*, 805 F. Supp. 3d 482, 498 (E.D.N.Y. 2025) (ordering immediate release where the petitioner was re-detained "with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond"); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) ("Indeed, given the nature of the constitutional violation [petitioner] sustained here—i.e., Respondents' failure to conduct any kind of individualized assessment *before* [re-]detaining him—any post-deprivation review by an immigration judge would be inadequate.").

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair

---

[14] *See Lopez-Arevelo*, 801 F. Supp. 3d at 687 ("[I]f such concerns exist, they would be squarely addressed if the Court were to grant the petition and order a bond hearing.").

[15] *See generally Alvarez Rico,* 2026 WL 522322, at *6 (S.D. Tex. Feb. 25, 2026) ("Indeed, given the high costs of detention, the fiscal and administrative burdens of providing noncitizens in these circumstances with some form of hearing pales in comparison with the burdens of re-detaining thousands of noncitizens who were previously released on recognizance."); *J.C.L.A.*, 2025 WL 2959250, at *7 ("[A]lthough the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is low.  In immigration court, custody hearings are routine and impose a minimal cost.  If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." (internal quotation marks and quoted sources omitted).

or mistaken deprivations." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). "The constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)) (internal quotation marks omitted). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . .").[16]

Accordingly, the Court should order Petitioner's immediate release in accordance with the terms and conditions of his prior Order of Recognizance and prohibit his re-detention unless and until he receives pre-deprivation process, i.e., meaningful notice of re-arrest[17] and a bond hearing which shall also include a meaningful opportunity to be heard and to respond to any of the Government's contentions before detaining him again.[18]

---

[16] *But see James Daniel Good Real Prop.*, 510 U.S. at 59-61 ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

[17] The undersigned uses "re-arrest" and "re-detention" interchangeably in this Report and Recommendation.

[18] *See, e.g.*, *Martinez*, 2025 WL 2965859, at *4 (granting procedural due process claim even where the petitioner established a life in the United States *without* government authorization) (citing other similar cases); *Diallo v. Trump*, 1:25-cv-2012 (W.D. La. March 5, 2026); *Alvarez-*

15

**IV. Equal Access to Justice Act**

Petitioner requests attorneys' fees under the Equal Access to Justice Act ("EAJA").  28 U.S.C. § 2412(d)(1)(A).  Because fees under the EAJA are not available in habeas corpus proceedings, the Court should deny Petitioner's request.  *Barco v. Witte*, 65 F.4th 782. (5th Cir. 2023).

**Recommendation**[19]

For the reasons above, **IT IS RECOMMENDED** that Petitioner Nikoloz Burashvili's request for habeas corpus be **GRANTED** on the basis of his second claim.  Respondents, including the warden of Jackson Parish Correctional Center, shall (A) **immediately release** Petitioner from custody in accordance only with the terms and conditions of his prior Order of Recognizance, without any additional bond requirements or new conditions, and (B) notify Petitioner's counsel of the exact location and time of his release no less than two hours before his release.

---

*Rico*, 2026 WL 522322, at *7 ("Respondents' re-detention of Alvarez-Rico without a pre-detention showing (or even allegation) of a change in his circumstances violated Alvarez-Rico's procedural due process rights."); *Lopez-Arevelo*, 801 F. Supp. 3d at 674; *Marceau*, 2026 WL 368953, at *2 (collecting similar cases and similar dispositions); *J.C.L.A.*, 2025 WL 2959250, at *1 (finding, where the petitioner was released on his own recognizance in August 2024, and re-arrested in September 2025, that the petitioner was likely to succeed on the merits of his procedural due process claim because he had a protected liberty interest in release); *Guillermo M. R. v. Kaiser*, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); *Vilela v. Robbins*, 2025 WL 3101334, at *6 (E.D. Cal. Nov. 6, 2025) ("Petitioner had been out of custody for nearly a year, and during that time, lived with her sister, worked, and developed ties to the community. Her detention denies her that freedom."); *Lnu v. Bondi*, 2026 WL 395290, at *7 (W.D. Wash. Feb. 12, 2026).

[19] The undersigned finds no need to address any claim or request for relief not addressed herein.

**IT IS FURTHER RECOMMENDED** that Respondents are **ENJOINED AND RESTRAINED** from re-detaining Petitioner unless and until he receives pre-deprivation process, including: (I) meaningful advance notice of the intent to re-detain him; and (II) a hearing at a meaningful time which shall also provide Petitioner a meaningful opportunity to respond to any of the Government's contentions concerning re-detention before detaining him again.

**IT IS FURTHER RECOMMENDED** that Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming his release.

**IT IS FURTHER RECOMMENDED** that Petitioner's request for attorneys' fees under the EAJA be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See*

*Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 6th day of April, 2026.

_____
Kayla Dye McClusky
United States Magistrate Judge